I'm Robert Clarida of Reitler, Kahless & Rosenblatt, representing the Plaintiff Appellant Creazioni Artistiche Musicali, which we'll call CAM for present purposes. This is a copyright infringement action. We're appealing from a grant of dismissal under Rule 12b-6 in the district court. CAM alleges that it owns The district court decided it on the basis of standing, is that right? That is correct, Your Honor. The court found that there was Basically, the question, the way the district court looked at it, as I understand it, is that your client did not have all the rights to the copyright, to all the copyrights. And without all of them, it didn't have standing to bring the suit. Well, more specifically, Your Honor, that's generally true. But more specifically, what we're talking about is did it have exclusive rights to prepare derivative works? Because that's the alleged infringing conduct. And the agreement in 1966 between the Italian parties used some language about all rights that is very, very broad. It also had an explicit grant of derivative work rights for adaptations. And so it had both a specific grant of derivative work rights and a general grant of all rights. So why did it also say so long as your rights are not prejudiced or limited? That's exactly the point that I think is inherently not clear from the face of the document itself. It's a grant of all rights to exploit the work and use the work. But it reserved to the author, your rights, such as your rights, will not be prejudiced. And it never says what your rights are. And I think, as we argue in our papers, Your Honor, your rights here, I believe, don't apply to the rights to exploit the works, because he's granted those all rights. What rights does he have? The right to get paid under the contract and his moral rights not to have his work bowed to the rise. Moral rights? Moral rights, yes. And the explicit grant of exclusive rights to make derivative works specifically reserves only his moral rights and not his other rights. His other rights, I think, particularly if you— has under much European copyright law and that we don't recognize at all, I guess. At least we don't call them moral rights when we do. That's correct, Your Honor. It's the right either to have your name associated with the work as its author and not to have the work modified in a way that is injurious to your reputation as an artist. That's under European law. That's under European law, yes. And clearly the grant of all rights so long as your rights are not prejudiced was referring to the right to be paid even in the event that the agreement was transferred from CAM to a third party. If you read the whole sentence, the all rights shall be transferred to us for the entire world with the right to transfer it in whole or in part to third parties so long as your rights are not prejudiced or limited. So what that's saying is we can transfer this agreement to a third party so long as your third party will honor your rights to pay the sums that are due under the contract. It's not saying that you will have rights to continue to exploit the work even after you give us all rights to exploit the work. How does the movie about Sweden using the Menominee, which I promise not to sing, how does that fit in to the analysis of this? How does the use of the movie? Movie's use. The use of the music in the movie. Incorporating a song into a motion picture is a derivative work. How does it have to do with this since you're not bringing suit against them, are you? How does that have to do with what we're hearing now? No, because Carlin America, the defendants in this case, licensed the use to the movie makers to exploit the work in a movie. That movie? In the Muppet movie that was the most recent Muppet movie, but in any movie. Carlin America. There is in the facts a specific mention of the use of the tune in a movie which had Sweden in the name. Oh, the Swedish movie. Mr. Umiliani, who wrote the song in 1966 for an Italian movie, then used the song again in a Swedish movie in 1968. And it was from the Swedish movie that Carlin eventually acquired the rights from the owner of the Swedish movie. And it's just that history which makes the Swedish movie or the movie about Sweden. That's right. And it's also interesting to note that in the composer's website, Mr. Umiliani talks about how he just improvised the music for the Swedish film in less than a minute, when, in fact, he had already written and recorded two versions of it in Italy two years before. And he chooses not to tell the world about that. I could do that and forget, but okay. So in addition to the first sentence that has the all rights grant, there's also a second sentence which says, you also give us the right to extract one or more musical excerpts from the soundtrack for any adaptations and arrangements that we deem necessary. But why would you need that if you've got all rights already in the first sentence? Because under the Italian copyright law, any grant of derivative work rights has to be set forth separately. That's in Article 119 of the Italian copyright law, which the district court was purporting to apply here. And also Article 119 of the Italian copyright law says that any such grant is presumed to be exclusive unless there is a contrary writing. And there's no contrary writing here. It's a grant to make adaptations and arrangements, and that grant under Italian copyright law is presumed to be exclusive. And the district court really inexplicably, for the first time in its decision, said, well, but cited to a treatise on Italian law and said, well, exclusivity is not deemed to be essential. But the statute itself says whether it's essential or not, it's deemed to be exclusive unless there's a contrary writing that says it's not exclusive. So we have a specific grant of derivative work rights in the second sentence, which has to be in the document for purposes of Italian copyright law. It's just a box you have to check under Italian copyright law. To say that we also are granting the right to make derivative works. What does Carlin America do other than publish sheet music? Is that its principle? I will let Carlin's counsel talk about the full range of what Carlin does. But mostly what music publishers do, Your Honor, is they license music for use in movies and TV shows and commercials and things like that. It's not the publication of it. It's the licensing. Right. And the sheet music business is a very, very small part of what most music publishers do. Okay. And, in fact, Section 119 of the Italian Copyright Act, which specifically talks about sheet music publication, there's case law in Italy that our expert, Professor Ghedini, relied on to say that those restrictions on print publications don't apply to a work that is for music publication generally. A contract that is for music publication generally covers all those uses and not just print publication. And I see that I've — I just have one question. Would the result have been different under American law? I don't believe — well, it certainly would have been different than the result the district court found. I think under American law, the transfer of rights to CAM would have been exclusive as well. We cite a case, the Geisel against Poynter Products case in our briefs from this court, from the Second Circuit, that said a grant of all rights has an everyday meaning. Everybody knows what all rights mean. It means a totality of the transfer, including the right to register for copyright and all the exclusive rights that are required for that. And anyone who wants to impose a different meaning on the term all rights has a heavy burden. All right. And I reserve a minute.  Thank you. Mr. Osterberg. Thank you, Your Honor. Your Honor, may it please the Court, Eric Osterberg for the Appellees, Carlin America, Inc., and Edward B. Marks Music Company. So this is an appeal about regarding the construction of a one-page contract. It's a 50-year-old contract, but it's still only a one-page contract. And quite honestly, I don't have a lot to add that Judge Sullivan did not already cover in his opinion. I think that Judge Sullivan thoroughly examined all the issues, did the research on Italian law and U.S. law, and covered it all in his opinion. But I do think it would be perhaps useful to go through the one-page contract and set forth the way that I see the language in that contract. The contract begins, following our understandings and with reference to the agreements with the production house, Zenith Sin, for the film provisionally entitled Dwell in El Mundo. We hereby confirm the following. So we know that this contract pertains to an agreement that's going to pertain to music in a film. So why is this important? Well, because under Italian law, so this is a contract made in Italy among Italians, Italian music publisher and Italian composer. They know that when a composer writes for a film, the filmmaker, the film producer, gets the rights to use the music in the film. The composer retains his rights to use the music outside the film. So there's provision in Italian law that says producer only gets the rights as what he needs to produce the film. Composer keeps all the rest. So that should be the starting point for analysis of, okay, what are we doing here? We're making a contract to write for a film. Then the next paragraph, you will compose and perform the musical score for the aforementioned film. Okay, so what's he going to do? He's going to write the music for the film. He's going to perform the music for the film. And, by the way, that's what he's going to get paid to do. This isn't a term contract. It's not, well, you're going to write for us for six months and whatever you write we get. It's not a whatever we'll pay you by the song. You write the score and you compose and perform the score for the film. And that's what you get paid. Then we turn to the really important language of the contract, which is the granting language. It says, all rights to use the music that you composed, which must mean the score because that's what he was hired to do, from the time of its creation shall be transferred to us for the entire world with the right to transfer it in whole or in part to third parties so long as your rights are not prejudiced or limited. We have a composer writing for a film. He gets to keep all the rights except for whatever the filmmaker needs. And his rights, so that's all, he gets to keep it outside of what's needed for the film. And his rights cannot be prejudiced or limited so long as your rights are not prejudiced or limited. What about this argument that that just dealt with the moral rights that are recognized under Italian law? Well, we talk about moral rights in the next sentence of the granting language. So clearly the parties knew how to say moral rights when they meant moral rights. It doesn't say so long as your moral rights are not prejudiced or limited. It doesn't fit so long as your moral rights are not prejudiced or limited because if we think about this as, okay, he's writing music for the film and the producer is getting the rights to use the music in the film. Cam, the music publisher, is just an intermediary. They need a music publisher to do a bunch of things with that music in the film. But one of the things they're not going to be doing is making derivatives except as expressly authorized under this agreement, which I'll get to in a moment. So there's not — there shouldn't be moral rights even implicated in this agreement because they don't have unfettered rights to make derivative works. And Cam has conceded that the all-rights granting language is not the operable language here because they've told us, oh, well, under Italian law, a grant of derivative work rights, which is the — which is the question here. Do they have the exclusive right to create derivative works? Cam has told us a grant of derivative work rights has to be separately set forth. So what they're saying is all rights, et cetera, doesn't pertain to derivative work rights. Their derivative work rights, if at all, must come in the next sentence of the grant. And what does that say? You also give us the right — also give us the right. So that means that you're giving something else in the second sentence. You also give us the right to extract one or more musical excerpts from the soundtrack, from the soundtrack, for any adaptions or arrangement that we deem necessary for the best commercial use and to add any lyrics to the individual musical tracks with the full freedom to choose the author and the work so long as your moral rights are not prejudiced. So what is Cam getting here in this grant of derivative work rights? Well, they're not getting an exclusive right because it doesn't say that. And I disagree with my adversary as to whether the law presumes an exclusive grant or not. The law in Italy and the United States actually are against presumptions of an exclusive grant where the words are not — where the word exclusive is not used or some manifestation of an exclusive grant is not given. And that's in Paula Marzano's declaration talks about that. And Judge Sullivan talks about that, citing the relevant authorities. In any case, it doesn't say they get exclusive rights. They get very limited rights. They get one or more musical excerpts from the soundtrack for the best commercial use. So what are we talking about here? The music publisher, right, is going to now exploit the music that was in the film and will have the right to modify it. Let's say they were to make a soundtrack album. They were supposed to make a soundtrack album, but they didn't. So they would have the rights to make certain modifications that might make it more commercially viable. And that's all they get here. They don't get Umiliani's full right to make derivative works. He had all the rights. They only got what he granted to them. So Judge Sullivan... Oh, okay. So then moving on, we have the payment provision. All right. So in the payment provision of the contract, so this is in paragraph 4 and 5, tells how Umiliani, the composer, is going to be paid. He gets paid for, as the composer of the music, making up the film's soundtrack. So he's not getting paid for music that's not in the film's soundtrack, which was one of the other arguments I've raised as a ground for affirmance and the district judge didn't address because he found this wasn't an exclusive grant of derivative work rights. He's not getting paid for music that's not in the film's soundtrack. He gets paid in paragraph 5 for directing the orchestra, creating the score, selecting music to record to discs. And then he specifically gets paid for the rights to distribute and reproduce the music. Not anything about modification or derivative works. It's nowhere included in his compensation. And in both the Italian copyright law and U.S. copyright law, we have the ability to divide up the copyright into various rights. You have the right to perform a copyrighted work. You have the right to distribute a copyrighted work. You have the right to make derivative works. Here, we only have two of the rights, distribute, reproduce, not make derivative works. That is so that's further evidence of the fact that he's not getting paid for exclusive derivative work rights. So how can a grant of rights that provides that an author's rights are not prejudiced or limited result in the ultimate prejudice? Cam's interpretation of so long as your rights are not prejudiced and limited is that despite that language, Miliani's rights can be completely and utterly prejudiced and limited. He has no rights because they have the exclusive rights. How can a grant of rights to extract one or more excerpts from a soundtrack and to add lyrics to individual tracks be construed as a grant of all rights to make derivative works, exclusive rights to derivative works? The answer is that it can't. Well, I see that my time is about up. Thank you, Your Honor. Good place. Thank you. Marita. Very briefly, just to touch on a couple of the points, most significantly, Judge Sullivan got it wrong and Carlin's counsel just got it wrong. The Italian Copyright Act does provide in Section 119, this is A158, in the Joint Appendix, Section 119, second paragraph, in the absence of a stipulation to the contrary, it shall be presumed that the rights transferred are exclusive. Article 119 says that. Judge Sullivan just completely ignored that and made no reference to that in talking about Article 119 and all the ways that Article 119 affects this matter. You can contract around that, though. Beg pardon? You can contract around that. You can contract around that. If there were language in the 1966 agreement that said these rights shall not be exclusive, the parties are free to do that. But the default position is that the rights are exclusive. And Judge Sullivan absolutely ---- What rights are exclusive? The rights to make these adaptations and arrangements that are being granted in the 1966 agreement. Is that everything? Because it has to be everything in order for them to have standing to bring this duty for you? Well, that's not true under either U.S. or Italian law. The party only needs to have the exclusive rights to use the particular, to make the particular use that's being made. So under U.S. law, since the 1976 Act went into effect, copyright can be infinitely divided and subdivided, and different people can have different exclusive rights, and each of them has standing to pursue a violation for those rights. All right. It sounds to me like you're arguing past each other because you're arguing about these specific rights and saying, well, you've got exclusive use to them, so you can sue here based on those narrow rights. And he's saying that because you have narrow rights and not all of the rights, you can't bring suit here, even on the narrower. Right. And I would add that that's not a finding that Judge Sullivan made. He didn't talk about the scope of the derivative work right. He just talked about whether it was exclusive or not. He made no finding as to which rights were being granted. And so for that reason, I think at the very least, it needs to go back to Judge Sullivan. All right. Thank you. Thank you, Your Honor. Thank you both. We'll reserve decision in this case. Remainder of the calendar is on submission, so I will ask the clerk. Isn't it? Yeah, yeah. Okay. Sorry. I get that look. Please adjourn court. Thank you. It's been a long week. Sorry.